UNITED STATES OF AMERICA          :
                                  :
    v.          :          Criminal Action No.:  13-cr-33(RC)
                                  :
KEVIN HOLLAND,          :          Re Document No.: 15,18-22,26
                                  :
    Defendant.          :

## MEMORANDUM OPINION

**DENYING GOVERNMENT'S MOTIONS TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(B) AND 609(A)(1); DENYING DEFENDANT'S MOTION FOR SUPPRESSION OF ELECTRONIC INFORMATION OBTAINED PURSUANT TO WIRETAP; DENYING DEFENDANT'S MOTION FOR DISCLOSURE OF BRADY, GIGLIO, AND JENCKS INFORMATION; DENYING DEFENDANT'S MOTION TO DISCLOSE IDENTITIES OF EACH CONFIDENTIAL INFORMANT; DENYING DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE; AND DENYING DEFENDANT'S MOTION FOR DISCOVERY OF CO-DEFENDANT AND CO-CONSPIRATOR STATEMENTS**

## I. INTRODUCTION

Defendant Kevin Holland is charged with three counts of unlawful distribution of cocaine, one count of conspiracy to distribute and possession with intent to distribute cocaine, and one count of unlawful distribution of heroin, pursuant to 21 U.S.C. §841(a)(1). Superseding Indictment, Jan. 30, 2014, ECF No. 17. Defendant has filed motions in limine prior to trial, for the: 1) disclosure of identities of each confidential informant, regardless of whether they will testify at trial, 2) disclosure of any co-defendant or co-conspirator statements in advance of trial, 3) disclosure of *Brady* and *Giglio* information, and the early production of *Jencks* material, 4) suppression of electronic information obtained from wiretaps, and 5) suppression of tangible evidence obtained pursuant to a search warrant. The Government has filed motions seeking the admission of Defendant's prior drug offense, pursuant to Fed. R. Evid. 404(b), and admission of

Defendant's prior assault and theft conviction, pursuant to Fed. R. Evid. 609(a)(1). The Court addresses each of these motions below.

## II. LEGAL STANDARD

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for motions *in limine,* the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'" *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984)). "Motions *in limine* are designed to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010). "Rule 103(d) of the Federal Rules of Evidence mandates that the court must conduct a jury trial to the extent practicable so that inadmissible evidence is not suggested to the jury by any means." *Daniels v. District of Columbia*, No. CV 11-1331 (BAH), 2014 WL 535213, at *2 (D.D.C. Feb. 11, 2014) (citing Fed. R. Evid. 103(d)). Importantly, a trial judge's discretion "extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." *Barnes*, 924 F. Supp. 2d at 79 (quoting *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011)).

"In evaluating the admissibility of proffered evidence on a pretrial motion *in limine* the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402." *Daniels*, 2014 WL 535213, at *3. A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice within its context means an undue tendency to suggest [making a] decision on an

improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 175 (2013) (quoting Advisory Committee's Note Fed. R. Evid. 403); *see also Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (explaining that evidence is unfairly prejudicial "if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.") (citations omitted). Under Rule 403, "the court must 'engage in on-the-spot balancing of probative value and prejudice and. . . exclude even factually relevant evidence when it fails the balancing test." *Daniels*, 2014 WL 535213, at *3 (quoting *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011)).

### III.  ANALYSIS

#### A.  Rule 404(b) evidence

The Government seeks the admission of the Defendant's 1996 conviction for a conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, pursuant to Rule 404(b). Govt.'s Mot. for Evid. Pursuant to 404(b), Jan. 24, 2014, ECF No. 15. Rule 404(b) of the Federal Rules of Evidence governs the admission of other crimes, wrongs, or bad acts of a defendant. The D.C. Circuit has described Rule 404(b) as one "of inclusion rather than exclusion," *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000), and has explained that it excludes only evidence that "is offered for the sole purpose of proving that a person's actions conformed to his or her character," *United States v. Long*, 328 F.3d 655, 661 (D.C.Cir.1993).

Evidence of other crimes, wrongs, or bad acts is admissible under Federal Rule of Evidence 404(b) if offered for a permissible purpose. Such permissible purposes include "proof

of intent, motive, opportunity, plan, knowledge, identity or absence of mistake or accident."
*United States v. Morrow*, 2005 WL 3159572 at *3 (D.D.C. Apr. 7, 2005); *see also United States v. Pindell*, 336 F.3d 1049, 1056 (D.C. Cir. 2003); *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990). This Circuit has made clear that Rule 404(b) "was intended not to define the set of permissible purposes for which bad-acts evidence may be admitted but rather to define the one impermissible purpose for such evidence." *Miller*, 895 F.2d at 1436. "Rule 404(b) thus is not so much a character rule as a special aspect of relevance" because it "does not prohibit character evidence generally, only that which lacks any purpose but proving character." *United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) (citing *Bowie*, 232 F.3d at 930).

The Court must conduct a two-part analysis to determine admissibility in the Rule 404(b) context. *See Miller*, 895 F.2d at 1435. First, the Court considers whether the evidence is "probative of some material issue other than character." *United States v. Clarke,* 24 F.3d 257, 264 (D.C. Cir. 1994); Fed. R. Evid. 404(b). Second, if the Court deems the evidence to be relevant, the Court should exclude the evidence only if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *Long*, 328 F.3d at 662. In close cases, the rule tilts toward the admission of the uncharged conduct evidence. *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("[T]he balance should be generally struck in favor of admission when the evidence indicates a close relationship to the event charged.") (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)).

The Government seeks to introduce evidence of facts and circumstances surrounding Defendant's prior drug offense. In 1996, Defendant pled guilty in the United States District Court for the District of Columbia (Criminal Case No. 94-394-02) to conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base. Def.'s Mot. at 2, ECF No.

15. Defendant here is charged with three counts of unlawful distribution of cocaine, one count of conspiracy to distribute and possession with intent to distribute cocaine, and one count of unlawful distribution of heroin. Superseding Indictment, Jan. 30, 2014, ECF No. 17.

21 U.S.C. §841(a)(1), pursuant to which Defendant is charged here, makes it unlawful for "any person *knowingly or intentionally* to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." (emphasis added). The Government intends to introduce the evidence of Defendant's previous drug offense to show Defendant's "knowing and intentional possession with intent to distribute narcotics in this case." Govt.'s Mot. for 404(b) evidence, Jan 24. 2014, ECF No. 15. At the motions hearing held in this matter on May 20, 2014, the Government asserted that Defendant's prior conviction would establish that he knew how cocaine looked, and knew how to arrange the time, place, and manner of a drug transaction.

In support of this, and in order to establish the probative value of the prior offense, the Government relies largely on the factual proffer presented orally during Defendant's 1995 plea hearing. However, perhaps because Mr. Kevin Holland was a co-defendant in the previous matter with his brother Andre Holland, the Government read only one, anemic factual proffer. Tr. Plea Hearing, at 19-20, Nov. 30, 1995, Govt.'s Supp. to Mot. Seeking 404(b) Evidence, Ex. 1, ECF. No 23. As a result, the factual proffer does not sufficiently distinguish the degree of each brother's involvement in the conspiracy.

The proffer states, for example, that Mr. Kevin Holland scheduled deliveries, and conducted hand-to-hand transactions on three occasions. Tr. Plea Hearing, at 20. However, the proffer adds that the drugs being sold were Andre Holland's, and that on other occasions, he personally scheduled drug deliveries to be simply executed by his brother Kevin. *Id*. It is thus

unclear how involved Mr. Kevin Holland actually was when scheduling deliveries, or whether he was in fact anything more than a simple delivery man. The proffer does not allege, for example, that Defendant ever saw the content of his deliveries, and thus cannot establish that Defendant knows what cocaine looks like. Similarly, although the proffer alleges that "Mr. Kevin Holland schedule[d] a delivery," the proffer does not explain how and with whom these transactions were arranged, nor does it further allege that Defendant used code words when scheduling the transactions. *Id.* Thus, the factual proffer cannot shed any light, other than in the most general way, of Defendant's knowledge concerning the drug trade and how to arrange transactions.

Notwithstanding the factual proffer, the Government additionally argues that Mr. Kevin Holland's prior conviction is probative as to his knowledge and intention to distribute because, in entering a guilty plea, Mr. Holland was required to accept that he "knowingly and intentionally distribute[d] a mixture and substance containing a detectable amount of cocaine base." *Id*. at 14-15. Although this is the element the Government intends to prove, generally speaking, it seeks to introduce Defendant's prior conviction for much more specific reasons —1) that the Defendant can recognize the drug he was allegedly dealing, and 2) to show Defendant's familiarity with the relevant terminology and code words used to schedule drug transactions. Defendant's mere acceptance of guilt pursuant to the basic elements of the conspiracy charge is not, without more, sufficiently probative on the *particular* issues for which the Government seeks to introduce this evidence. And indeed, courts routinely look for factual similarities above and beyond the bare elements of a prior conviction to determine the probativeness of a prior offense.  *See, e.g.*, *United States v. Crowder* 141 F.3d 1202, 1214-15 (D.C. Cir. 1998) (finding that a previous drug offense provided evidence of *modus operandi* because the Government presented evidence that the defendant used certain colored bags for certain quantities and types of cocaine); *United States v.*

*Burch*, 156 F.3d 1315, 1323-24 (D.C. Cir. 1998) (admitting a prior drug conviction under 404(b) but emphasizing that Defendant was selling the same substance (crack cocaine) and on the same block as his previous offense). Because the factual proffer does not clearly establish Defendant's knowledge, the Court finds that Defendant's prior conviction has little, if any, probative value.

The Court thus turns to the second prong of the 404(b) test—whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. As the Defendant correctly notes, "[e]vidence of prior wrongful behavior. . . risks that the jury may infer guilt simply on the basis that the accused has committed wrongful acts." *Campbell v. United States*, 450 A.2d 428, 431 (D.C. 1982). Such evidence "diverts the jury's attention from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character." *Id.* Courts have previously recognized the strong prejudicial effect of prior drug convictions, "because it invites the jury to infer that [the defendant] has a propensity for drug offenses" and that he must thus be guilty of this drug offense as well. *United States v. Watson*, 171 F.3d 695, 703 (D.C. Cir. 1999); *see also United States v. (Dennis) Mitchell,* 49 F.3d 769, 776–77 (D.C. Cir. 1995)*; United States v. (Timothy) Johnson,* 27 F.3d 1186, 1193 (6th Cir. 1994)*; United States v. (Michael) Johnson,* 970 F.2d 907, 912-14 (D.C. Cir. 1992). Although many courts have nonetheless allowed evidence of prior drug convictions pursuant to 404(b), the probative value of the evidence was quite high in those cases. *See, e.g.*, *Crowder* 141 F.3d at 1214-15 (finding probative value in the prior conviction because the Government presented evidence that the defendant used certain colored bags for different quantities and types of cocaine, thus indicating a *modus operandi*); *Burch* 156 F.3d at 1323-24 (finding probative value in the prior conviction because the government was able to establish that in both the prior conviction and the present matter, the defendant was found selling the same

substance on the same street block). Because the probative value of Mr. Holland's prior

conviction is quite minimal, and because the similarity between the two convictions is likely to

prejudice the jury into improperly inferring that because Defendant was previously a drug dealer

he probably still is one, the Court finds that the prejudicial effect of the evidence substantially

outweighs the probative value, and thus denies the Government's motion for 404(b) evidence.

## B. Federal Rule of Evidence 609(a)(1)

The Government seeks to introduce evidence of Defendant's prior convictions pursuant

to Fed. R. Evid. 609, for the purpose of attacking Defendant's character for truthfulness should

the Defendant choose to testify as a witness. Govt.'s Notice of Impeachment, Jan. 24, 2014, ECF

No. 16. The Government offers two prior convictions under Fed. R. Evid. 609: assault in the

second degree pursuant to Md. Code, Crim. Law §3-203, and theft under $500 pursuant to Md.

Code, Crim. Law §7-104(g)(2). The penalty for each of these convictions is over one year.

Fed. R. Evid. 609(a)(1) allows a party to attack a "witness's character for truthfulness by

evidence of a criminal conviction for a crime that, in the convicting jurisdiction, was punishable

by death or by imprisonment for more than one year." Fed. R. Evid. 609(a)(1). Such evidence

"*must* be admitted in a criminal case in which the witness is a defendant, if the probative value of

the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B)

(emphasis added). This Circuit has previously held that "all felonies have some probative value

on the issue of credibility." *United States v. Lipscomb*, 7902 F.2d 1049, 1062 (D.C. Cir. 1983).

Nevertheless, the Court must still determine whether the probative value of admitting this

evidence is outweighed by the prejudicial effect to the Defendant. *Id.* at 1058; Fed. R. Evid. 609(a)(1)(B).[1]

The Court balances several factors in determining whether the probative value of the proffered prior convictions is outweighed by unfair prejudice to the Defendant: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the defendant; and (5) generally, the impeachment value of the prior crime.'" *United States v. Pettiford*, 238 F.R.D. 33, 41 (D.D.C. 2006) (citing *United States v. Butch*, 48 F. Supp. 2d 453, 464 (D.N.J. 1999). "This list does not exhaust the range of possible factors, but it does outline the basic concerns relevant to the balancing under Rule 609(a)(1)." *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980)).

The Court first considers the type of crime involved, and whether that crime is particularly probative of the Defendant's truthfulness. Under Rule 609(a)(1), a court "*may* admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403," *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) (emphasis in original), because "all felonies have some probative value on the issue of credibility." *Lipscomb*, 702 F.2d at 1062. Thus, "[w]hile many felonies exemplifying untruthful

---

[1] Fed. R. Evid. 609(a)(2) mandates that the Court allow a "witness's character for truthfulness to be attacked by evidence of a criminal conviction. . . for any crime regardless of the punishment…if the court can readily determine that establishing the elements of the crime required proving–or the witness's admitting–a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Under Rule 609(a)(2), the Court would not be permitted to balance the probative value of the prior conviction against the prejudice to the Defendant. Instead, Rule 609(a)(2) "creates a *per se* rule that probativeness outweighs prejudice for crimes" involving a dishonest act or false statement, and thus, such acts *must* be admitted into evidence. *United States v. Lipscomb*, 702 F.2d 1049, 1064 (D.C. Cir. 1983). Neither party here argues that the Defendant's prior convictions fall under this mandatory provision. As a result, the Court only analyzes this motion under 609(a)(1).

behavior fall within the ambit of Rule 609(a)(2), many crimes that do not fit that provision are nonetheless quite probative of veracity." *Estrada*, 430 F.3d at 618.

Nevertheless, courts have held that certain types of felonies are not particularly probative of a witness's credibility under 609(a)(1), especially when they do not require plaintiffs to make a false statement. *See, e.g., United States v. Rosales*, 680 F.2d 1304, 1306–07 (10th Cir. 1981) (excluding convictions for forgery, burglary, conspiracy, illegal possession of a firearm, and violation of narcotics laws as "not normally suggest[ive of] the special probative value on the issue of credibility contemplated by Fed. R. Evid. 609(a)(1)"); *Furtado v. Bishop*, 604 F.2d 80, 93–94 (1st Cir. 1979) (finding convictions for armed robbery, burning a building, and assault and battery were "not particularly probative of credibility").

"An influential case from the Court of Appeals for the District of Columbia. . . distinguished between crimes that reflect adversely on a persons integrity, and which therefore bear on honesty—such as those involving deceit, fraud, and theft—and acts of violence, 'which may result from a short temper, a combative nature, extreme provocation, or other causes, [and] generally have little or no direct bearing on honesty and veracity.'" *Estrada*, 430 F.3d at 617-18 (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)). In essence, this Circuit stated in *Gordon* that "convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not." *Gordon*, 383 F.2d at 940.

Defendant's prior conviction for assault pursuant to Md. Code, Crim. Law §3-203(a) did not require an individual to make a false statement in order to be found guilty. Indeed, the statute simply states that "[a] person may not commit an assault." Md. Code, Crim. Law §3-203(a). Nor did the Government present any additional evidence at the motions hearing that this assault involved dishonest conduct or false statements. Instead, the assault charge allegedly arose out of

a "stick-up" involving Defendant and his brother Andre Holland. As a result, the Court finds that Plaintiff's previous assault is not particularly probative in regards to Defendant's character for truthfulness.

Theft pursuant to Md. Code, Crim. Law §7-104(g)(2) similarly does not require Defendant to make a false or dishonest statement as an element of the crime. And indeed, Defendant's conviction for theft allegedly arose out of the same facts as the assault—a mugging. According to the facts presented during the motions hearing, Defendant did not make any false or dishonest statements in connection with his conviction for theft. Of course, crimes such as robbery still "show[ ] conscious disregard for the rights of others" and thus "reflect[ ] more strongly on credibility than, say, crimes of impulse, or simple narcotics or weapons possession." *Lipscomb*, 702 F.2d at 1071. Nevertheless, this Circuit has previously held that crimes of theft not involving the use of false statements are not particularly probative as to the Defendant's character for truthfulness. *See, e.g.*, *United States v. Smith*, 551 F.2d 348, 364 (D.C. Cir. 1976) (finding that armed robbery is not a crime of dishonesty or false statement); *United States v. Dorsey*, 591 F.2d 922, 935 (D.C. Cir. 1978) *superseded by statute as stated in United States v. Fennell*, 53 F.3d 1296, 1300 (D.C. Cir. 1995) (holding that shoplifting is not a crime of dishonesty or false statement); *United States v. Fearwell*, 595 F.2d 771, 776 (D.C. Cir. 1978) (same for petit larceny). Given the nature of the theft and its factual connection to the conviction for assault, which is otherwise considered a crime of violence, the Court finds that the theft has only minimal probative value into Defendant's character for truthfulness.

The Court thus turns to the prejudicial effect of the prior convictions. Generally, prior convictions have at least some prejudicial effect on a Defendant, as a jury could "generaliz[e] a defendant's earlier bad act into bad character and tak[e] that as raising the odds that he did the

later bad act now charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Moreover, this Circuit has recognized that impeachment through use of prior convictions has a greater prejudicial effect where, as here, the impeached witness is also the Defendant. *Lipscomb*, 702 F.2d at 1063 (noting that "[t]here is less risk of prejudice when a defense witness other than the defendant is impeached through a prior conviction because the jury cannot directly infer the defendant's guilt from someone else's criminal record"). Moreover, as the Government has stated, in impeaching Defendant with these prior convictions, it can do no more than to ask whether he was convicted of the crime. *See, e.g.*, *United States v. Morrow*, 537 F.2d 120, 141 (5th Cir. 1976). It cannot further explore the facts surrounding the crimes. *Id.* As a result, the jury will only know that Defendant was convicted of "assault" and "theft," but will not know the seriousness of those alleged crimes, and thus their general probative value of Defendant's character for truthfulness. As the Supreme Court recognized, "evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Old Chief*, 519 U.S. at 185.

Finally, this Circuit has recognized that a limiting instruction would not be particularly effective in this scenario. When "[t]he jury is told to consider the defendant's prior conviction only on the issue of credibility and not on the overall issue of guilt. . .the jury [is required] to perform 'a mental gymnastic which is beyond, not only their powers, but anybody else's.'" *Lipscomb*, 702 F.2d at 1062 (citing *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.)). The Court thus finds that the prior convictions' probative value of Defendant's character for truthfulness is quite minimal, and is outweighed by the prejudicial nature of the evidence. As a result, evidence of Defendant's prior Maryland convictions is inadmissible for purposes of impeachment.

### C. Motion to Suppress Electronic Information Obtained from Wiretap

Defendant next moves to suppress the contents of all intercepted wire communications and seized electronic communications. Def.'s Mot. to Suppress Electronic Communications, Feb. 5, 2014, ECF No. 18. The legal standards that govern an application for a court order authorizing the interception of wire, oral, or electronic communications are defined by statute:

> Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, authorizes the district court to approve an application for the interception of certain wire, oral, or electronic communications. 18 U.S.C. § 2518. The wiretap statute requires that an application for a wiretap shall be in writing, under oath, and shall contain certain information including "a full and complete statement of the facts and circumstances relied upon by the applicant[ ] to justify his belief that an order should be issued." *Id.* § 2518(1). On the basis of the facts submitted by the applicant, the district court may authorize a wiretap upon finding that (1) probable cause exists to believe that an individual has committed or is about to commit one of certain enumerated offenses; (2) probable cause exists to believe that "particular communications concerning that offense will be obtained" through an interception; (3) "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried"; and (4) probable cause exists to believe that the communication facility sought to be wiretapped "[is] being used, or [is] about to be used, in connection with the commission of [the] offense." *Id.* § 2518(3)(a-d); *see United States v. Donovan*, 429 U.S. 413, 435 (1977). The determination that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(3)(c), is referred to as the "necessity requirement," and it is the "keystone of congressional regulation of electronic eavesdropping." *United States v. Williams*, 580 F.2d 578, 587–588 (D.C. Cir. 1978).

> The wiretapping statute also requires that "[e]very [wiretap] order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable [and] shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception...." 18 U.S.C. § 2518(5). This is referred to as the "minimization requirement." Although "[t]he statute does not forbid the interception of all nonrelevant conversations," the government must make reasonable efforts to "minimize" the interception of such conversations. *Scott v. United States*, 436 U.S. 128, 139–40 (1978). The statute also provides that an order authorizing an interception cannot extend "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days." 18 U.S.C. §2518(5).

> The wiretap statute provides that "no part of the contents of [intercepted] communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding ... if the disclosure of that information would be in violation of this chapter." *Id.* § 2515. The "aggrieved person" may move to suppress the introduction of wiretap evidence or its fruits if "the communication was unlawfully intercepted," the "order of authorization or approval under which it was intercepted is insufficient on its face," or if "the interception was not made in conformity with the order of authorization or approval." *Id.* § 2518(10)(a)(i-iii); *see Donovan*, 429 U.S. at 433–34.

*United States v. Carter*, 449 F.3d 1287, 1292–93 (D.C. Cir. 2006).

On December 16, 2011, the Honorable Judge Bates approved a wiretap warrant over telephone number 704-277-7076, which the FBI had identified as a number connected to the Defendant. Def.'s Opp'n. at 6. Judge Bates further authorized a "roving wiretap" for the interception of changing cellphones used by the Defendant for a 30-day period. *Id.* Judge Bates extended this roving wiretap for an additional 30-day period on January 26, 2012 and again on February 25, 2012. *Id.* at 6-9.

Between December 16, 2011, and March 25, 2012, the FBI began to tap cellphone numbers not specifically listed in the wiretap warrant. The Government believes that it was able to intercept these cellphone conversations and text messages pursuant to Judge Bates's roving wiretap authorization. Def.'s Opp'n, at 7-9. To cover its bases, the Government provided Judge Bates with additional memoranda detailing the new cell numbers it intended to track. *Id.* at 7-10. Judge Bates signed these memoranda. *Id.* Pursuant to the Court's request at the motions hearing, the Government has submitted these materials to the Court *ex parte*. *See* Govt's Ex Parte Supplement, May 22, 2014, ECF No. 34. The Court now orders the Government to produce these documents for defense counsel.

Defendant now seeks to suppress evidence obtained pursuant to the Government's wiretap of four cellphone numbers. He argues that these numbers could not be subsumed under Judge Bates's initial roving wiretap because the Government did not submit evidence describing

the manner in which they obtained those new numbers. Defendant further seeks to suppress evidence obtained from *all* of the Government's wiretaps, arguing that the Government failed to demonstrate the necessity for electronic surveillance in general, and failed to comply with the statute's minimization requirement.

1. **Probable Cause.**

To determine whether probable cause exists for a wiretap courts apply the same legal standards used to determine whether probable cause exists for a search warrant. *See, e.g., United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999). Accordingly, a federal judge must "simply. . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that. . . evidence of a crime" will be obtained by the interception of wire, oral, or electronic communications." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "While each fact standing alone may be insufficient, the combination of all the facts can establish probable cause." *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999). It is the duty of a reviewing court "to ensure that the [judge issuing the wiretap order] had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39.

Defendant does not dispute that Judge Bates had probable cause in issuing the original wiretap warrant on December 16, 2011. Nor does the Defendant contest the general validity of the roving wiretap. Defendant only argues that, before the Government intercepted cellphone conversations pursuant to the roving wiretap, it was required to submit proof to the authorizing Judge describing how it obtained the new numbers, and how it verified that Defendant was connected to those numbers.

Although no Circuit has addressed this particular issue, other courts have upheld the constitutionality of Section 2518(11)(b) of Title III of the Omnibus Crime and Control Safety Act's ("Title III"). Section 2518(11)(b) of Title III, authorizing the use of roving wiretaps, states, in relevant part:

> **(11)** The requirements of subsections (1)(b)(ii) and (3)(d) of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if….
>
> > **(b)** in the case of an application with respect to a wire or electronic communication--
> >
> > > **(i)** the application is by a Federal investigative or law enforcement officer and is approved by the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General;
> > >
> > > **(ii)** the application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing that there is probable cause to believe that the person's actions could have the effect of thwarting interception from a specified facility;
> > >
> > > **(iii)** the judge finds that such showing has been adequately made; and
> > >
> > > **(iv)** the order authorizing or approving the interception is limited to interception only for such time as it is reasonable to presume that the person identified in the application is or was reasonably proximate to the instrument through which such communication will be or was transmitted.

18 U.S.C. §2518(11)(b). In contrast, to obtain a non-roving wiretap, the investigative officer must submit:

> (b) **a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including:**
>
> > (i) details as to the particular offense that has been, is being, or is about to be committed,

**(ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted**,

(iii) a particular description of the type of communications sought to be intercepted,

(iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted

18 U.S.C. §2518(1)(b) (emphasis added). Section 2518(1)(b)(ii) specifically exempts roving wiretap authorization obtained pursuant to §2518(11) from the "particularity" requirement. Thus, §2518(11) acts as a substitute to §2518(1)(b)(ii) for situations in which the Government cannot easily identify the facility used for communication, such as a cell phone number. This is precisely why authorization for a roving wiretap requires the Judge to make a finding that the "person's actions could have the effect of thwarting interception from a specified facility." 18 U.S.C. §2518(11)(b)(ii). Because the parties do not dispute that the roving wiretap was properly issued by Judge Bates, the roving wiretap covers other additional cell phone numbers linked to Defendant, even if no additional proof is submitted for those numbers.

Other courts have similarly upheld the constitutionality of the roving wiretap provision, albeit on a slightly different issue. Nevertheless, these courts have specifically noted that "[t]he conditions imposed on 'roving' wiretap surveillance. . . satisfy the purposes of the particularity requirement." *United States v. Petti*, 973 F.2d 1441, 1445 (9th Cir. 1992); *see also United States v. Gaytan*, 74 F.3d 545, 553 (5th Cir. 1996); *United States v. Bianco*, 998 F.2d 1112, 1120-25 (2d Cir. 1993) (abrogated on other grounds by *Groh v. Ramirez*, 540 U.S. 551 (2004)); *United States v. Jackson*, 207 F.3d 910, 914 (7th Cir. 2000) (reconsidered on other grounds); *United States v. Savoy*, 883 F. Supp. 2d 101, 116-18 (D.D.C. 2012). Moreover, these courts have recognized that, in enacting the roving wiretap provision, "Congress contemplated the roving surveillance of suspects who. . . use cloned cellular phone numbers and changed numbers

frequently to avoid detection." *Savoy*, 883 F. Supp. 2d at 116. The roving wiretap thus authorizes the Government to intercept any number connected to a particular individual, even if they cannot identify the number that they are tracking. *Id.*

Defendant's argument seeks to limit the scope of the roving wiretap by arguing that the Government must first inform the judge of the facts surrounding its acquisition of the number—which is essentially what the Government is otherwise required to do under 18 U.S.C. §2518(1)(b)(ii) when obtaining a non-roving warrant. Practically speaking then, the government would be required to return to the authorizing judge each time the suspect changes cell phones, and obtain new authorization to intercept communications from that phone. This would impose a burden on the government, especially in cases such as this one. In the instant case, Mr. Holland employed six different cellphone numbers in the time period between January 2011 and December 2011, and an additional seven numbers between December 16, 2011 and March 25, 2012. Govt.'s Omnibus Opp'n at 4–9, n.2. Defendant's proposed requirement would thus eviscerate the purpose of the roving wiretap, which was specifically adopted to remedy the challenges the government faces when investigating sophisticated individuals seeking to thwart surveillance. *See United States v. Hermanek*, 289 F.3d 1076, 1087 (9th Cir. 2002); *Savoy*, 883 F. Supp. 2d at 116. If the government has to return to the Court and obtain authorization each time the Defendant switched numbers, there would be no purpose to the roving wiretap.

Moreover, the Court notes that the heightened procedural safeguards provided in 18 U.S.C. §2518(11)(b) allay any additional constitutional concerns. The roving wiretap does "not permit a 'wide-ranging exploratory search'" and requires the government to first establish that "it is the suspect's purpose to thwart interception" by changing communication devices. *Petti*, 973 F.2d at 1445. The affidavit first requesting a roving wiretap established that Defendant had "used

at least seven different cellular telephones" in a period of six months, while communicating with

Confidential Source 1 (CS-1). Affidavit in Support of Application, at ¶15, Feb. 10, 2014, ECF

No. 24, Ex. 1. The Affidavit further notes that Defendant had "previously been intercepted in a

T-III investigation" and "was made aware of his intercepted telephone calls during the discovery

process and at trial" in the previous case. *Id.* The affidavit concluded that the Defendant was

"keenly aware and mindful of law enforcement's ability and concerted efforts to intercept

telephones." *Id.* Additionally, the affidavit outlined several minimization techniques. One such

technique required all intercepted electronic communications to first be reviewed by a case

agent, who would disclose those communications to the Assistant United States Attorneys,

outside law enforcement, defense counsel, or the public, only if he or she found them to be

"pertinent." *Id.* at ¶70. The Court thus finds that the affidavit met the required procedural

safeguards provided in 18 U.S.C. §2518(11)(b).

Because "the conditions imposed by the roving wiretap provision. . . and. . . the many

safeguards mandated by the statute for both roving and fixed interceptions satisfy the Fourth

Amendment requirement that 'no greater invasion of privacy [occur] than [is] necessary' to meet

'the legitimate needs of law enforcement,'" *Id. citing Katz v. United States*, 389 U.S. 347, 355-56

(1967), and because the affidavit met the required standards here, the Court finds that the statute

does not obligate the Government to submit additional information to the authorizing judge for

cell-phone numbers obtained pursuant to a roving wiretap.

Despite not having to do so under the statute, the Government has in fact returned to the

Court each time the Defendant changed phones and submitted detailed memoranda to the

authorizing Judge. Memorandum for 804-479-5646, Dec. 28, 2011, Ex. 1; Memorandum for

864-525-9522, Feb. 7, 2014, Ex. 2; Memorandum for 202-322-5484, Feb. 9, 2012, Ex. 4;

Memorandum for 443-930-7339, March 19, 2012, Ex. 5. These memoranda described in detail 1) how law enforcement officials discovered that the Defendant had stopped using the currently tracked cell phone, 2) how law enforcement then utilized pen registers and toll records to determine the new number Defendant began to use, and 3) how law enforcement confirmed that it was in fact the Defendant using the new number. *Id.* Judge Bates accepted and signed each of these memoranda. *Id.* The Court accordingly finds that the Government exceeded the information required for a finding of probable cause.

**2.  Necessity**

The necessity requirement in 18 U.S.C. § 2518 mandates that a wiretap application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." 18 U.S.C. § 2518(1)(c). Courts will "reject[ ] generalized and conclusory statements that other investigative procedures would prove unsuccessful." *United States v. Williams*, 580 F.2d 578, 588 (D.C. Cir. 1978). However "[b]ecause. . . the statutory command was not designed to 'foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted,'" the government will meet its burden of demonstrating necessity if it shows that "other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation." *Williams*, 580 F.2d at 588. Moreover, this Circuit has held that "a court may authorize the wiretap of the phone of a member of an operation if traditional investigative techniques have proved inadequate to reveal the operation's full 'nature and scope.'" *United States v. Brown*, 823 F.2d 591, 598 (D.C. Cir. 1987).

The D.C. Circuit has previously held that "the necessity requirement was met by specific evidence in affidavits establishing that a drug trafficking operation existed, the defendants were involved in the operation, and the government tried to gather information about the defendant in other ways." *Glover*, 583 F. Supp. 2d at 36–37 (referencing *United States v. Carter*, 449 F.3d 1287, 1293 (D.C. Cir. 2006); *United States v. Sobamowo*, 892 F.2d 90, 93 (D.C. Cir. 1989)). Here, the Government attests that Defendant's proposed methods (physical surveillance, use of confidential witnesses, mail covers, search warrants, and other investigative techniques) could not have adequately led to Defendant's drug suppliers, because Defendant was technologically savvy. Other courts have found the necessity exemption satisfied based on much less information concerning exhaustion of alternative methods.

In *Carter*, for example, the government only attempted to use physical surveillance, which the government found would not succeed because of the defendant's counter-surveillance methods and "because physical surveillance alone would not generate detailed information on the activities and associates [of the members of the operation]." 449 F.3d at 1294. Similarly, in *Sobamowo*, the government attempted to use foreign sources and informers, checked federal law enforcement agency records, and conducted physical surveillance. 892 F.2d at 93. The D.C. Circuit found these efforts adequate and noted that the government "was not required to enumerate every technique or opportunity missed or overlooked." *Id.*

In the Government's initial December 2011 affidavit, the Government noted that it had employed normal investigative procedures, including: surveillance, debriefings of cooperating witnesses, controlled purchases of narcotics by cooperating sources, consensual recordings of conversations, review of pen register and telephone records, and review of public records. Affidavit in support of Application for Wiretap, Dec. 16, 2011, Notice of Filing, Ex. 1, ECF No.

24. Although these methods had proven successful in establishing an ongoing illegal narcotics business, the Government stated that these methods had not "yielded sufficient evidence to ascertain the full scope of the narcotics trafficking conspiracy." *Id.* Specifically, the investigators were hoping to identify all members of the conspiracy, including co-conspirators, the sources of funds for the drug trafficking organization, and the location of the organization's stash houses for narcotics and drug proceeds. *Id.* at ¶53.

The affidavit further explained the deficiencies in each traditional surveillance method. Undercover agents and cooperating sources were unable to penetrate the organization and gain access to the identity of suppliers, or the manner in which the members laundered their illegal drug proceeds. *Id.* at ¶¶54, 56. The cooperating sources did not have sufficient access to the Defendant's suppliers and could not provide information regarding "the locations of their stash houses, approximate quantities of cocaine being distributed by the drug organization, and what methods/channels [we]re utilized to transport narcotics and/or drug proceeds." *Id.* at ¶54. Moreover, the affidavit concluded that even new cooperating witnesses would not have access to the full scope of the trafficking operation. *Id.* "In order to thwart law enforcement" and to "protect their own financial interest," "a dealer would never introduce a customer to his supplier." *Id.* The dealer would be worried that "the customer would then cut the dealer, and the dealer's profit, out of the supply chain," and the supplier would be worried that he or she was "vulnerable to a customer who is 'compromised' by law enforcement or intent on theft from the supplier." *Id.*

Controlled drug purchases were insufficient to gather the full scope of the trafficking operation for much the same reason. Because a dealer has no interest "in divulging the names of his drug suppliers," the controlled purchases could not yield sufficient evidence concerning

Defendant's suppliers, their whereabouts, their drug stash locations, or the intricate details of their narcotics operation. *Id.* at ¶55.

Similarly, physical surveillance, although helpful in identifying certain meeting points, was of limited value as it could not, by itself, establish the necessary elements of a criminal charge. *Id.* at ¶57. For example, although agents were able to trail Defendant to certain meeting points through physical surveillance, they:

> could not observe what HOLLAND was doing, whether or not HOLLAND was meeting with someone else, or whether or not HOLLAND'S visit was even related to his narcotics trafficking. However, even if agents had observed HOLLAND meeting with someone, the mere fact that HOLLAND met with another individual in a shopping plaza does not prove that their encounter was illicit. . . . Such an observation alone cannot provide sufficient evidence necessary for successful prosecution.

*Id.* at ¶58. Moreover, the affidavit noted that physical surveillance had to be used cautiously given Mr. Holland's vigilance in avoiding detection, as evidenced by his sophistication with cellphone tracking. *Id.* Prolonged surveillance could lead to detection and could "totally nullify the investigation to date." *Id.* For example, "if physical surveillance was detected the conspirators might radically change their *modus operandi*, including telephone numbers and the persons with whom they were dealing drugs." *Id.*

Use of grand jury witness subpoenas likewise would not be effective, as "the only known witnesses who could provide evidence to a grand jury" of the full scope of the narcotics trafficking "are the persons intimately involved in the criminal activity at the highest levels" and thus "unlikely…to testify voluntarily or truthfully." *Id.* at ¶63. The affidavit predicted that such witnesses would likely "assert their Fifth Amendment privilege not to testify" and would further "cause the co-conspirators to become more cautious in their activities, to flee to avoid investigation or prosecution, to destroy evidence, to threaten the lives of the cooperating individuals, or otherwise compromise the investigation." *Id.* The use of search warrants, too,

would "alert the target subjects to the ongoing investigation" and thus result in many of the same consequences already outlined above. *Id.* at ¶66. For example, "co-conspirators would likely relocate their base of operations and obtain new telephone numbers," thus mooting the effectiveness of a physical search warrant. *Id.* Moreover, co-conspirators arrested pursuant to this method generally refuse to incriminate themselves or their close working associates, unless law enforcement is able to present solid evidence of their involvement. *Id.* Such evidence did not exist at the time of the affidavit, and so a physical search warrant would not have succeeded in ascertaining evidence of the full scope of the trafficking operation. *Id.*

Given the thorough explanation and analysis in its affidavit, the Court finds that the Government sufficiently met the necessity requirement prior to obtaining the wiretap authorization.

## 3. <u>Minimization</u>

Defendant finally argues that the Government failed to make an initial prima facie showing that it complied with the minimization requirement. Defendant asks that the Government first carry its prima facie burden, arguing that he will rebut that showing once it is made.

All wiretap orders must contain a provision that requires that the wiretap "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). "What the wiretapping statute forbids is failure by the government to make reasonable efforts to minimize interceptions of non-pertinent communications. *Carter*, 449 F.3d at 1295. As a result, "[b]efore the court can find that the government failed to comply with the minimization requirement, the defendant must show that 'some conversation was intercepted which clearly would not have been intercepted had

reasonable attempts at minimization been made.'" *United States v. Savoy*, 883 F. Supp. 2d 101, 107-8 (D.D.C. 2012) (quoting *United States v. Scott*, 516 F.2d 751, 757 (D.C. Cir. 1975); *see also United States v. Giacalone*, 853 F.2d 470, 482 (6th Cir. 1988) (holding that the burden of production and persuasion rests on the person seeking to suppress wiretap evidence on the basis of improper minimization); *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (holding that "[a] motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented" and "must allege facts which, if proven, would provide a basis for relief"); *United States v. Duarte–Rosales*, 2008 WL 140665, at *3 (N.D.Ga. Jan.11, 2008) (rejecting minimization challenge because the defendant asserted no specific facts to suggest that the requirements were not met). "Without some showing on Defendant's part, this Court cannot conclude that the Government did not minimize its interception of non-pertinent calls or that a hearing should be held to require the Government to prove that it properly minimized interception of irrelevant calls." *United States v. Maldonado*, 2014 WL 61483, at *21 (N.D.Ga. Jan. 8, 2014). Defendant has not identified conversations containing non-pertinent information that ought to have been, but were not, minimized. Absent such identification, the Government has not been provided information to which it is required to respond. Consequently, the Court cannot find that the Government failed to minimize non-pertinent communications.

*     *     *

Because the Government's wiretap meets all three requirements under Title III—probable cause, necessity, and minimization—the Court denies Defendant's motion to suppress evidence obtained pursuant to the wiretap.

**D. Motion for Disclosure of *Brady* and *Giglio* Information and for the Early Production of Jencks Information**

Defendant next requests that the Court order the Government to provide him with *Brady, Giglio,* and *Jencks* materials. Def.'s Mot. for disclosure of Brady, Giglio and Jencks Information, Feb.5, 2014, ECF No. 19. In its motion, Defendant requests several types of information from the Government, but without any specificity. For example, Defendant requests "copies of any indictment, complaints or information" brought against "each witness the government intends to call at trial, or any member of the family of such witness." Def.'s Mot. ¶4,Feb. 5, 2014, ECF No. 19. Similarly, Defendant requests "any material not otherwise listed which reflects or evidences the motivation of any witness the government intends to call at trial." *Id.* at ¶6.

As the Defendant correctly notes, and the Government agrees, the information Defendant lists in his motion should be properly disclosed by the Government. However, the Government states that it understands its *Brady* and *Giglio* obligations, has disclosed information pursuant to these obligations, and will continue to do so in a timely manner. At the motions hearing, defense counsel agreed that the Government has been timely and forthcoming in its disclosure of *Brady* and *Giglio* information.

Defendant also requests disclosure of *Jencks* material at this time. However, as the Government correctly notes, this Circuit has held that "the *Jencks* Act directs that in a criminal prosecution, statements made by government witnesses or prospective government witnesses are not open to discovery or inspection by the defense until said witnesses have testified on direct examination in the trial of the case." *Tarantino*, 846 F.2d at 1414. Moreover, *Tarantino* has prohibited early discovery of such information, regardless of whether early disclosure of the *Jencks* material may assist the Defendant in preparing for trial. *Id.* at 1414-15. "In balancing a

criminal defendant's need for such statements against legitimate state interests, Congress provide for discovery of statements only *after* the witness has testified, out of concern for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process." *Id.* at 1414. This Circuit has previously recognized that there is an inherent violence and danger that accompanies the cocaine trade and that disclosure of an informant's identity exposes them to the "real potential of retaliation at the hands of cocaine traffickers." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1330-31 (D.C. Cir. 2000); *see also United States v. Payne,* 805 F.2d 1062, 1065 (D.C. Cir. 1986) (firearms "are as much tools of the [drug] trade as more commonly recognized drug paraphernalia"); *Navegar, Inc. v. United States,* 192 F.3d 1050, 1058 (D.C. Cir. 1999) (Congressional Record establishes " disproportionate link between [assault] weapons and drug-trafficking and violent crime"); *United States v. Holland,* 810 F.2d 1215, 1219 (D.C. Cir. 1987) (drug transactions "contribute directly to the violent and dangerous milieu that Congress sought to eliminate"). And the Government has indicated that Defendant has already shown a proclivity to disclose the identities of known secret informants to the community at large. Gov't.'s Opp'n. at 22 n.3. Thus the Court finds that the informants' safety to be a particularly sensitive issue in this matter, which cautions against early disclosure of *Jencks* information.

Finally, the Government again states that it understands its obligations under the *Jencks* Act and promises to disclose *Jencks* material in a timely manner, suggesting the Friday before the week that the witness will testify at trial. Gov't's Opp'n at 21. This Court joins the common standard practiced by numerous other Judges in this District, and orders the Government to provide Defendant with the *Jencks* materials the Friday before the week that the witness will be testifying.

**E. Motion to Disclose Identities of Each Confidential Informant Regardless of Whether They Will be Called at Trial**

Defendant next moves for the disclosure of the identities of the Government's confidential informants, citing to *Roviaro v. United States*, 353 U.S. 53 (1957), for the proposition that disclosure is necessary to ensure fundamental fairness and due process. Def.'s Mot. to Disclose Identities, Feb. 5, 2014, ECF No. 20. The government argues that "the disclosure of informants names, to the extent that the Defendant does not already know them, would expose those informants to danger in the violent drug community." Govt.'s Opp'n., 22. Moreover, the Government has promised to make any informant who does not testify at trial available to the Defendant.

The "informant's privilege" is a well-established doctrine recognizing the "government's right to withhold the identity of confidential informants in furtherance of the public's interest in encouraging citizens to share with law enforcement officers any knowledge they have about crimes." *Glover*, 583 F. Supp. 2d at 11 (citing to *Roviaro*, 353 U.S. at 59). Nevertheless, this privilege is not absolute and must give way if disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. . . ." *Roviaro*, 353 U.S. at 60-61. It is the Defendant who bears the "heavy burden. . . to establish that the identity of an informant is necessary to his defense." *United States v. Skeens*, 449 F.2d 1066, 1070 (D.C. Cir. 1971).

In assessing whether disclosure is warranted, "the Court must take into consideration the particular circumstances of the case, including the charged crime, the [d]efendants' possible defenses, the potential significance of the informant's testimony, and other relevant factors." *Glover*, 583 F. Supp. 2d at 12. Defendant argues that fundamental fairness warrants the early disclosure of confidential informants, "in order to investigate bias, motives to fabricate and to

cast doubt upon the credibility of certain witnesses." Def.'s Mot. to Disclose Identities, 2. However, the Defendant does not go further to identify any defenses or other arguments of significance that the early disclosure of an informant's identity might advance. *Id.*; *see also United States v. Gaston*, 357 F.3d 77, 85 (D.C. Cir. 2004). Moreover, the Government has indicated that Defendant has already shown a proclivity to disclose the identities of known secret informants to the community at large. Govt.'s Opp'n., 22 n. 3. Thus, as described further above, the Court finds the informants' safety to be a particularly sensitive issue in this matter.

Additionally, it appears that *Rovario* is not even applicable here. The Government has represented to this Court that there will only be a small number of cooperating witnesses called to testify, and that at this time, there are no cooperating witnesses that the Government does *not* intend to call to testify. However, as the Government correctly notes, *Roviaro* and its progeny only apply when the informant does *not* testify at trial. *See United States v. Palfrey*, 515 F. Supp. 2d 120, 126 (D.D.C. 2007); *Glover*, 583 F. Supp. 2d at 12. Thus, there appear to be no cooperating witnesses to which the logic of *Rovario* applies. [2]

Regardless, the Court does not believe that the Defendant shall be prejudiced by a denial of this motion. To the extent that the Defendant does not already know the identities of the Government's cooperating witnesses, he shall have adequate time to investigate the biases for such a small group of individuals when he receives such information closer to the time of their proposed testimony. Moreover, the Government has promised to make non-testifying informants available to the Defendant at the commencement of trial, and the Court presumes that such

---

[2] The Court notes that *Rovario v. United States*, 353 U.S. 53, 65 (1957), involved a case in which the Government's informer was the sole participant, other than the accused, in the transaction charged. In the matter at hand however, it is unclear whether the Government has employed any cooperating witnesses who were not also participants in, or witnesses of, the charged crime.

informants will be made at a "time that affords the defendants a meaningful opportunity to ascertain whether these individuals have any information that is material to the defense." *Glover*, 583 F. Supp. 2d at 13. Accordingly, Defendant's motion to disclose the identities of confidential informants is denied.

## F.  Motion to Suppress Tangible Evidence

 Defendant moves to suppress tangible evidence obtained pursuant to the Government's warranted search of 8801 Lottsford Road, Apt. 155 in Largo, MD. Def.'s Mot. to Suppress Tangible Ev., Feb. 5, 2014, ECF No. 21. During that search, it is alleged that mail matter, receipts, tax information, bank documents, and other miscellaneous records were recovered. Defendant argues that these tangible items must be suppressed, as the warrant to search the property was not supported by probable cause.

As already stated above, in determining whether probable cause for a warrant exists, a federal judge must "simply. . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that. . . evidence of a crime" will be obtained. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "While each fact standing alone may be insufficient, the combination of all the facts can establish probable cause." *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999). It is the duty of a reviewing court "to ensure that the magistrate had a 'substantial basis for. . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39.

Defendant makes only one argument in arguing that the affidavit did not establish probable cause—that the affidavit provides only a "tenuous nexus between the alleged narcotics transaction and the target location." Def.'s Mot. to Suppress Tangible Ev. at 5, Feb. 5, 2014, ECF

No. 21. This Circuit, however, has rejected such an argument in the past, instead finding sufficient probable cause where an affidavit relied on expert testimony that "drug dealers frequently keep business records, narcotics, proceeds from sales, and firearms in their houses." *United States v. Johnson*, 437 F.3d 69, 72 (D.C. Cir. 2006); *see also*, *United States v. Thomas,* 989 F.2d 1252, 1254 (D.C. Cir. 1993) ("observations of illegal activity outside of the home can provide probable cause for the issuance of a search warrant…even in the absence of an allegation that any illegal activity occurred in the home itself.").

In his affidavit, investigator Derek Starliper stated that he had participated in investigations of criminal activity, including those pertaining to drug trafficking activities. Affidavit in support for Search Warrant of Physical Property, at ¶2, Jan. 31, 2013, Govt. Supplement, Ex. 1, ECF No. 30. He has previously worked in the Organized Crime and Drug Enforcement Task Force and has experience investigating individuals who "as a part of their narcotics trafficking, also commit money laundering offenses and use a variety of means to hide the true source of their narcotics income." *Id.* at ¶3. Mr. Starliper further attests that, based on this training and experience, he knows that "individuals who deal in illegal controlled substances keep such substances, as well as paraphernalia, in their residences." *Id.* at ¶5a. Moreover, Mr. Starliper attests that Mr. Kevin Holland had executed a lease in his name for the identified target location. Finally, Mr. Starliper observed Defendant's car parked in the garage at this location immediately following observed narcotics transactions. *Id.* at ¶ 12. Pursuant to these facts, the Court finds that there was a fair probability that the Defendant, who had been adequately described as having engaged in drug transactions, would keep contraband or other evidence of his crime in his residence, despite the fact that he had not been alleged to have engaged in drug

transactions there. Thus, the Court finds there to be sufficient probable cause for the warrant authorizing a search of 8801 Lottsford Road, Apt. 155.

Defendant also argues that the affidavit establishing probable cause to search 8801 Lottsford Road, Apt. 155, should be suppressed pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), because it relied on misleading material statements, and omitted critical facts that would have undermined the basis for the issuing Judge's finding of probable cause. Def.'s Mot. to Suppress Tangible Ev. At 6. In order to challenge an affidavit pursuant to *Franks*, the Defendant must show that "(1) the affidavit contained false statements; (2) the statements were material to the issues of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Richardson,* 861 F.2d 291, 293 (D.C. Cir. 1988). *Franks* has also been held to apply to material omissions—"'material' meaning that their 'inclusion in the affidavit would defeat probable cause.'" *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) (quoting *United States v. Colkley*, 899 F.,2d 297, 301 (4th Cir. 1990)). As a general rule, there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171.

Defendant argues that the affidavit omitted that, in the Government's three-year investigation of Defendant's drug activities, law enforcement officers never stopped Defendant "while he purportedly was in possession of either drugs or money." Def.'s Mot. at 6. The Defendant concludes that this omission was material because it evidenced the Government's failure, or inability, to corroborate its position that Mr. Holland was selling drugs to confidential informants. *Id.* However, this omission simply cannot defeat probable cause because, despite the omission, the affidavit describes with particularity the process by which investigators determined

that the Defendant sold drugs to confidential informants. *See* Affidavit for Search Warrant, ¶8, Jan 1, 2013. The Affidavit states in relevant part:

> Between July 2011, and November 2011, CW-1 arranged and conducted four narcotics-related transactions with HOLLAND during which HOLLAND sold amounts totaling over 300 grams of cocaine to CW-1. Each quantity of narcotics purchased from HOLLAND in the above-mentioned drug transaction was submitted to the DEA's Mid-Atlantic Laboratory and found to contain cocaine hydrochloride. CW-1 was equipped with an audio/video recording device for each transaction. Through surveillance and the down loaded recordings obtained from the audio/video recording device law enforcement was able to positively identify the individual that CW-1 had met with as HOLLAND. Prior to each transaction, CW-1 called HOLLAND using a telephone number previously supplied by HOLLAND in order to arrange a time and location to meet. Before and after conducting each of the controlled purchases of cocaine, law enforcement searched CW-1 and the undercover vehicle for contraband and money with negative results. Prior to each transaction, CW-1 was also provided an amount of pre-recorded law enforcement funds in order to purchase a quantity of cocaine from HOLLAND. After each of the controlled cocaine purchases by CW-1 from HOLLAND (which were monitored by law enforcement agents), CW-1 turned over a quantity of narcotics to law enforcement agents which field tested positive for the presence of cocaine.

*Id.*

Moreover, as already analyzed above, the Government presented several other facts, including the affiant's experience in narcotics trafficking, to support probable cause to search the target property. Following controlled purchases, Defendant's car was parked in the target property's garage and the lease on the property was registered in his name. *Id.* at ¶¶12,13. Moreover, a reasonable judge reviewing the application at issue would assume that, if the affidavit did not state that the defendant had been stopped while in possession of either drugs or money, such an event did not occur. After all, had such an event occurred, any reasonable agent would have included it as contributing to probable cause, if not outright arrest. Accordingly, omitting information that a reviewing judge would have assumed anyway could not be material to the probable cause determination. Hence, the Court denies the Defendant's motion to suppress tangible evidence, and for a *Franks* hearing.

### G. Motion for Discovery of Co-Defendants and Co-Conspirator Statements

Defendant moves for an order, pursuant to Fed. R. Crim. P. 801(d)(2)(E), mandating that the Government disclose in advance of trial any co-defendant or co-conspirator statements that the Government plans to admit against him. Def.'s Mot. for Discovery of Co-Defendant and Co-Conspirator Statements, Feb. 5, 2014, ECF No. 22. However, this Circuit has made clear that "the government is not required to provide pre-trial discovery of co-defendant and co-conspirator statements." Govt.'s Omnibus Brief in Opp., 29, March, 7, 2014, ECF No. 29. Indeed, the D.C. Circuit has "decline[d] to extend the defendant's right to discovery beyond that required by statute or the Constitution," and has found that neither the *Jencks* Act nor the Federal Rules of Evidence mandate such disclosures. *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988) (per curiam). As a result, "courts in this jurisdiction have no authority to order the pre-trial discovery of co-conspirator [or co-defendant] statements, regardless of whether [such individuals] will testify at trial." *United States v. Glover*, 583 F. Supp. 2d 5, 11 (D.D.C. 2008); *see also United States v. Edelin*, 128 F. Supp. 2d 23, 33 (D.D.C. 2001) ("Criminal defendants are only entitled to statements of non-testifying witnesses or co-conspirators if those statements qualify as *Brady* material."). Accordingly, the Court denies Defendant's motion for pre-trial disclosure of co-conspirator and co-defendant statements.

### IV. CONCLUSION

For the foregoing reasons, Government's Motions to Admit Evidence Pursuant to Federal Rules of Evidence 404(b) and 609(a)(1) are DENIED, and Defendant's Motion for Suppression of Electronic Information Obtained Pursuant to Wiretap, Defendant's Motion for Disclosure of *Brady*, *Giglio*, and *Jencks* Information, Defendant's Motion to Disclose Identities of Each Confidential Informant, Defendant's Motion to Suppress Tangible Evidence, and Defendant's

Motion for Discovery of Co-Defendant and Co-Conspirator Statements are DENIED.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 30, 2014                                        RUDOLPH CONTRERAS
                                                                        United States District Judge